IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | CA 06 198T |
| | ) | |
| v. | ) | Civil No. ____________ |
| | ) | |
| TEXTRON INC. and SUBSIDIARIES, | ) | |
| | ) | |
| Respondent. | ) | |

**PETITION TO ENFORCE INTERNAL REVENUE SUMMONS**

The United States of America, by and through its undersigned counsel, hereby petitions this Court for an order enforcing the Internal Revenue Service (IRS) summons served on Textron Inc. and Subsidiaries ("Respondent"), and complains and alleges as follows:

1. Jurisdiction over this matter is conferred upon this Court pursuant to Internal Revenue Code (26 U.S.C.) sections 7402(b) and 7604(a) and 28 U.S.C. sections 1340 and 1345.

2. Venue over this matter is proper in the District of Rhode Island, as the Respondent named herein resides in or may be found within the boundaries of this district.

3. In order to obtain enforcement of a summons, the petitioner must establish that the summons: (1) is issued for a legitimate purpose; (2) seeks information relevant to that purpose; (3) seeks information that is not already within the IRS's possession; and (4) satisfies all administrative steps required by the Internal Revenue Code. United States v. Powell, 379 U.S. 48, 57-58 (1964). The petitioner's burden of satisfying the Powell requirements is a slight one that can be met merely by presenting the sworn affidavit of the agent who issued the summons attesting to these facts. Sylvestre v. United States, 978 F.2d 25, 26 (1st Cir. 1992); United States v. Lawn Builders of New England, Inc., 856 F.2d 388, 392 (1st Cir. 1988). The United States

submits and incorporates by reference the Declaration of Revenue Agent Edward J. Vasconcellos and the exhibits attached thereto in support of this petition. The United States also submits and incorporates by reference the Declaration of Douglas R. Carmichael. As set forth more fully below, the United States has met the Powell factors through the declarations and exhibits.

4. Edward J. Vasconcellos is a Revenue Agent of the IRS, employed in the Large and Mid-Size Business division of the IRS in Providence, Rhode Island, and is authorized to issue IRS administrative summonses pursuant to Internal Revenue Code section 7602 and Treasury Regulation (26 C.F.R.) section 301.7602-1. See Declaration of Revenue Agent Edward J. Vasconcellos (Vasconcellos Decl.), which is being filed concurrently herewith, ¶ 1.

5. Revenue Agent Vasconcellos is the team manager of a team of IRS employees conducting an investigation to determine the correct federal income tax liabilities of the Respondent's 1998, 1999, 2000 and 2001 taxable years. Vasconcellos Decl., ¶ 2.

6. Pursuant to the above-described examination, on June 2, 2005, Revenue Agent Vasconcellos issued an administrative summons (Form 2039) directing Respondent to appear at the IRS office in Providence, Rhode Island, on June 17, 2005, to give testimony and produce for examination the following books, papers, records, and other data: all of the Respondent's Tax Accrual Workpapers for the taxable year ending December 29, 2001. Vasconcellos Decl., ¶ 4 and Ex. 1.

7. Revenue Agent Vasconcellos served the summons on the Respondent by handing an attested copy of the summons to Norman Richter, the Respondent's Vice President of Taxes, on June 2, 2005. Vasconcellos Decl., ¶ 6 and Ex. 1.

8. By letter dated June 15, 2005, and hand-delivered to the IRS that same date, the Respondent informed the IRS that it would not be producing the materials sought by the summons. To date, the Respondent has not produced any materials sought by the summons. Vasconcellos Decl., ¶ 7.

9. The IRS has not obtained any of the summoned documents. Vasconcellos Decl., ¶ 24.

10. The testimony and documents described in the summons may be relevant to determine the correct federal income tax liabilities of the Respondent for the taxable year ending December 29, 2001. Vasconcellos Decl., ¶¶ 16-21; see United States v. Arthur Young & Co., 465 U.S. 805, 814-815 (1984) (holding that tax accrual workpapers are relevant within the meaning of 26 U.S.C. section 7602, and stating that "[r]ecords that illuminate any aspect of the return–such as the tax accrual workpapers at issue in this case–are therefore highly relevant to legitimate IRS inquiry.").

11. All administrative steps required by the Internal Revenue Code for the issuance of a summons have been followed. Vasconcellos Decl., ¶ 22.

12. No Justice Department referral is in effect within the meaning of 26 U.S.C. section 7602(d)(2) with respect to the Respondent for the tax periods covered by the summons. Vasconcellos Decl., ¶ 23.

WHEREFORE, petitioner, the United States of America, respectfully prays as follows:

A. That this Court enter an order directing Respondent to show cause in writing, if any, why it should not be ordered to comply with and obey the aforementioned summons and each requirement thereof;

B. That this Court enter an order directing respondent to fully obey the aforementioned summons and each requirement thereof by ordering the attendance, testimony, and production required and called for by the terms of the summons, before Revenue Agent Vasconcellos, or any other proper officer or employee of the IRS, at such time and place as may be set by Revenue Agent Vasconcellos, or any other proper officer or employee of the IRS;

C. That the United States recover its costs incurred in maintaining this action; and

D. That the Court grant such other and further relief as it deems is just and proper.

Respectfully submitted this 27th day of April, 2006.

ROBERT CLARK CORRENTE
United States Attorney

Thomas P. Cole

THOMAS P. COLE
JENNIFER D. AUCHTERLONIE
Trial Attorneys, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 514-9611
(202) 514-9593
Thomas.P.Cole@USDOJ.GOV
Jennifer.D.Auchterlonie@USDOJ.GOV

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CA 06 198T |
| Petitioner, | ) | |
| v. | ) | Civil No. ________________ |
| TEXTRON INC. and SUBSIDIARIES, | ) | |
| Respondent. | ) | |

**BRIEF IN SUPPORT OF PETITION TO ENFORCE SUMMONS**

**Introduction**

The United States submits this brief in support of its petition to enforce the administrative summons that has been served on respondent Textron Inc. and Subsidiaries (the Taxpayer). As discussed below, the United States' petition and the declarations of Revenue Agent Edward J. Vasconcellos and Douglas R. Carmichael filed herewith establish a prima facie case for enforcement of the summons. The Court therefore should order respondents to show cause, in writing, why the summons should not be enforced.

**Statement of Facts**

The facts in support of the Petition to Enforce Internal Revenue Service Summons are set forth in the Declaration of Revenue Agent Edward J. Vasconcellos (Vasconcellos Decl.) filed with the petition and this brief. The IRS is also relying upon the Declaration of Douglas R. Carmichael (Carmichael Decl.) filed with the petition and this brief. Mr. Carmichael is the former Chief Auditor and Director of Professional Standards of the Public Company Accounting Oversight Board and now a professor at Baruch College of the City University of New York.

To summarize, the Service is conducting an examination into the Taxpayer's federal tax liabilities for its tax years 1998 through 2001. Vasconcellos Decl., ¶ 2. During the course of the ongoing examination, Revenue Agent Vasconcellos has determined that the Taxpayer claimed tax benefits from multiple "listed transactions" for its 2001 tax year. Vasconcellos Decl., ¶¶ 13-15. Accordingly, the IRS requested that Taxpayer produce copies of its tax accrual workpapers for the 2001 tax year. The Taxpayer has not complied with the summons.

In general, tax accrual workpapers are documents created by a corporation and its independent auditors, which relate to a corporation's reserves for contingent tax liabilities. Vasconcellos Decl., ¶ 5; Carmichael Decl. ¶¶22-25. These documents typically contain information pertaining to the corporation's financial transactions, identifying questionable positions the corporation may have taken on its tax returns, and reflecting the corporation's or its independent auditor's evaluation of such positions, including an opinion regarding the validity of such positions. Vasconcellos Decl., ¶ 5; Carmichael Decl. ¶¶ 26-29. A company's tax accrual workpapers are prepared by the corporation's own tax accountants to document the contents of the accrual for income taxes, including the current and deferred liabilities for income taxes. Carmichael Decl., ¶ 23. These liabilities reflect management's judgment about the likely outcome of the review by the IRS of the positions management has or expects to take in its tax returns. Id.

With respect to the Taxpayer's tax year 2001, the Taxpayer claimed tax benefits from several "Sale-In, Lease-Out" transactions. Vasconcellos Decl., ¶¶ 14-15. On February 11, 2005, the IRS issued Notice 2005-13, (2005-9 I.R.B.630, 2005 WL 327549), in which the Service designated as a listed transaction certain transactions known as "sale-in, lease-out" ("SILO")

transactions. The notice alerted "taxpayers and their representatives that these transactions are tax avoidance transactions and identifies these transactions, and substantially similar transactions, as listed transactions. . . ." According to the notice, a SILO is a sale-leaseback arrangement between a taxpayer and a "tax-indifferent person in which substantially all of the tax-indifferent person's payment obligations are economically defeased and the taxpayer's risk of loss from a decline, and opportunity for profit from an increase in the value of the leased property are limited." A taxpayer entering into a SILO claims to obtain the benefit of net tax deductions currently, with a corresponding deferral of income until later years, while exposing the taxpayer to little or no risk of loss. During the examination, the examination team concluded that four sets of transactions, involving nine separate investments, were the same or substantially similar to the transactions identified in Notice 2005-13. Vasconcellos Decl. ¶ 14.

Specifically, the examination team determined that the following transactions are the same as or substantially similar to the SILO transactions described in Notice 2005-13:

a. Two transactions entered into on March 1, 2001, pursuant to which Textron Financial Corporation purported to, on the same day, purchase from and lease back to BT Cellnet Ltd. and other parties certain mobile telephone network equipment used in a United Kingdom telecommunications network;

b. Three transactions entered into on July 27, 2001, pursuant to which Textron Financial Corporation purported to, on the same day, purchase from and lease back to Regie Autonome des Transports Parisiens and other parties, certain rail equipment, including fixed and immovable property, used in the state-owned transportation network in the Paris area;

c. Two transactions entered into on September 26, 2001, pursuant to which Textron Financial Corporation purported to, on the same day, purchase from and lease back to Telecom Corp. of New Zealand Ltd. and other parties, certain telephone network equipment used in a New Zealand telecommunications network;

d. Two transactions entered into on September 28, 2001, pursuant to which Textron Financial Corporation purported to, on the same day, purchase from and lease back to Societe Francaise du Radiotelephone and other parties, hardware and software for use in a mobile telephone communications network in France.

(Vasconcellos Decl., ¶ 14.)

The Service has determined that when a taxpayer engages in a "listed transaction" which is disclosed to the Service, the Service will seek the tax accrual workpapers related to that transaction and when a taxpayer engages in more than one "listed transaction," it will seek disclosure of all tax accrual workpapers. Accordingly, and in furtherance of the Service's examination, Revenue Agent Vasconcellos issued a summons to the Taxpayer seeking its tax accrual workpapers for the 2001 tax year. Vasconcellos Decl., ¶¶ 4, 15. The Taxpayer has not provided any documents in response to the summons.[1] Vasconcellos Decl., ¶ 7.

---

[1] As noted in the Vasconcellos Declaration, the Taxpayer informed the IRS in a June 15, 2005 letter that it would not be producing the materials sought by the summons. In that letter, the Taxpayer indicated that it would produce the tax accrual workpapers for a certain set of transactions–the SILO transactions described above–on condition that the IRS agreed not to take any steps to seek the remainder of the Taxpayer's tax accrual workpapers. The IRS has not agreed to the Taxpayer's proposal. Vasconcellos Decl., ¶7.

## Question Presented

Whether the administrative summons at issue meets the Powell requirements for enforcement.

## Discussion

**The Summons Satisfies the *Powell* Requirements for Enforcement.**

***1. Statutory Authority for Administrative Summonses***

Pursuant to Internal Revenue Code Section 7601[2], the Secretary of the Treasury is directed to "cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax." Section 7602(a)(1) authorizes the Secretary to "examine any books, papers, records, or other data which may be relevant or material" in connection with "ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability."[3] Section 7602(a)(2) authorizes the Secretary to issue summonses to compel persons in possession of such books, papers, records, or other data to appear and produce the same and/or give testimony. Accordingly, the IRS may summon any person "the Secretary may deem proper . . . to produce such books, papers, records or other data, and to give

---

[2] All references are to the Internal Revenue Code of 1986, as amended (26 U.S.C.), unless otherwise indicated.

[3] In addition, §7602(d) precludes the enforcement of a summons if there is a "Justice Department referral" in effect with respect to the taxpayer under investigation for the periods under investigation. No such referral has been made with respect to the Taxpayer.

such testimony, under oath, as may be relevant or material to such inquiry. " Section 7602(a)(2). "The summons power is an investigative tool provided by Congress to enable the IRS to determine and assess all taxes due under the Internal Revenue Code. Section 7602 grants the Secretary or his delegate wide latitude to summons information necessary for investigative purposes." United States v. Jose, 131 F.3d 1325, 1327 (9th Cir. 1997); United States v. Freedom Church, 613 F.2d 316, 321 (1st Cir. 1979) (acknowledging "the broad investigative authority given to the IRS under Section 7602"). Section 7602 is the IRS's principal information-gathering authority. Donaldson v. United States, 400 U.S. 517, 523-524 (1971). Courts have broadly construed Section 7602 in light of its intended purpose of furthering effective tax investigations and rejected attempts to circumscribe effective exercise of the IRS's summons power. See United States v. Arthur Young & Co., 465 U.S. 805, 816 (1984); United States v. Euge, 444 U.S. 707, 715-716 (1980); United States v. Bisceglia, 420 U.S. 141, 146 (1975). In Bisceglia, 420 U.S. at 145, the Supreme Court observed,

> We begin examination of these sections against the familiar background that our tax structure is based on a system of self-reporting. There is legal compulsion, to be sure, but basically the Government depends upon the good faith and integrity of each potential taxpayer to disclose honestly all information relevant to tax liability. Nonetheless, it would be naive to ignore the reality that some persons attempt to outwit the system, and tax evaders are not readily identifiable.

When a summoned person refuses or fails to fully comply with a demand for testimony or records, or both, the United States can petition a court, as it has done here, for an order compelling compliance with the summons. See Sections 7402 & 7604; Freedom Church, 613 F.2d at 321. The usual procedure is for the United States to file a petition accompanied by a

declaration of the Revenue Agent to demonstrate satisfaction of the requirements of United States v. Powell, 379 U.S. 48 (1964). The burden to demonstrate satisfaction with the Powell requirements is minimal.

The First Circuit has characterized the United States' burden under Powell as a "minimal" one that "may be made on the face of the summons and by supporting affidavits." Freedom Church, 613 F.2d at 321.[4] "Assertions by affidavit of the investigating agent that the requirements are satisfied are sufficient to make the prima facie case." United States v. Lawn Builders of New England, Inc., 856 F.2d 388, 392 (1st Cir. 1988); Sylvestre v. United States, 978 F.2d 25, 26 (1st Cir. 1992). "Once the government has made its minimal showing of the relevancy of the information sought, the burden shifts to the summonee to challenge the summons on that or any other ground." Freedom Church, 613 F.2d at 321. Put another way, "[o]nce a prima facie case for enforcement" is made, it becomes the taxpayer's "burden to refute the prima facie case or to present sufficient evidence that the court's process," has been "abused," by showing that the summons has "been issued for an improper purpose or for any other purpose reflecting on the good faith of the investigation." Sylvestre, 978 F.2d at 27.

The Supreme Court has held that the taxpayer "may challenge the summons on any appropriate grounds," including failure to satisfy the Powell requirements or abuse of the court's process. Reisman v. Caplin, 375 U.S. 440, 449 (1964). However, once the government has

---

4 Summons enforcement matters are customarily decided on the written records and in summary proceedings. See United States v. Stuart, 489 U.S. 353, 369 (1989)(quoting S.Rep. No. 494, 97th Cong., 2d Sess. 285 (1982), reprinted in 1982 U.S.C.C.A.N. 781, 1031); Freedom Church, 613 F.2d at 321. This procedure is contemplated by Rule 78 of the Federal Rules of Civil Procedure and sanctioned by Congress. S. Rep. No. 97-494, Vol. 1, 97th Cong., 2d Sess. 285.

established the Powell requirements, "those opposing enforcement of a summons...bear the burden to disprove the actual existence of a valid civil tax determination or collection purpose by the Service...Without a doubt, this burden is a heavy one." United States v. LaSalle Nat'l Bank, 437 U.S. 298, 316 (1978). The First Circuit instructs that the taxpayer "shoulder[s] a significant burden of production," such that the taxpayer "must articulate specific allegations of bad faith and, if necessary, produce reasonably particularized evidence in support of those allegations." United States v. Gertner, 65 F.3d 963, 967 (1st Cir. 1995); see also Freedom Church, 613 F.2d at 319 ("[s]ome evidence supporting respondent's allegations should be introduced") (quoting United States v. Salter, 432 F.2d 697, 700 (1st Cir. 1970)). The taxpayer's burden "does not demand that the taxpayer conclusively give the lie to the prima facie case," but the taxpayer must "create a substantial question in the court's mind regarding the validity of the government's purpose." Gertner, 65 F.3d at 967.

If the taxpayer satisfies the burden of production, the district court then "weighs the facts, draws inferences, and decides the issue." Id. The court may proceed "to an evidentiary hearing," but may also, "in appropriate circumstances, forgo such a hearing and decide the issues on the existing record." Id. The First Circuit has ruled that "there is no hard-and-fast rule compelling an evidentiary hearing." Id; accord Tiffany Fine Arts, Inc. v. United States 469 U.S. 310, 324 n. 7 (1985) ("[I]t was well within the District Court's discretion to conclude, after reviewing the submissions of the parties and holding oral argument, that an evidentiary hearing on the question of enforcement was unnecessary" ); Freedom Church, 613 F.2d at 321 (stating that if a party fails to "put in issue allegations of the complaint" or raise "proper affirmative defenses," "no evidentiary hearing will be required" and that "the matter can be decided on the pleadings.").

### 2. *The Four Powell Requirements for Summons Enforcement*

In order to obtain judicial enforcement of an administrative summons, the United States "must show [1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the Commissioner's possession, and [4] that the administrative steps required by the Code have been followed." United States v. Powell, 379 U.S. 48, 57-58 (1964). The United States, through the declaration of Revenue Agent Vasconcellos and the declaration of Douglas Carmichael, has established, by far more than the "minimal showing" required, satisfaction of the Powell requirements.

#### *A. The Summons Was Issued for a Legitimate Purpose*

The summons was issued for a legitimate purpose, *i.e.*, to ascertain the correctness of Taxpayer's 2001 federal corporate income tax return and to determine Taxpayer's liability for its 2001 tax year. Vasconcellos Decl., ¶ 4. The purpose of the Service's investigation is specifically authorized by 26 U.S.C. § 7602(a). Obtaining information relevant to an examination of a particular taxpayer's liability need not be the sole or even primary purpose for summoning the information. Tiffany Fine Arts, Inc., 469 U.S. at 323-24. And, the United States need not demonstrate probable cause, Powell, 379 U.S. at 53-57.

#### *B. The Summons Seeks Relevant Information.*

Section 7602(a)(1) authorizes the Secretary of the Treasury to summon the records of any person "which may be relevant or material" to the investigation. The First Circuit has stated that "[f]or enforcement of a section 7602 summons, the test of relevancy that the IRS must meet is whether the inspection sought might have thrown light upon the correctness of the taxpayer's

returns." Freedom Church, 613 F.2d at 321. Where the summons is directed at the entity under investigation, as it is here, the First Circuit has ruled that "the Internal Revenue Service's showing of relevancy need only be minimal." Id. This low threshold was articulated by the Supreme Court as follows:

> As the language of § 7602 clearly indicates, an IRS summons is not to be judged by the relevance standards used in deciding whether to admit evidence in federal court. Cf. Fed. Rule Evid. 401. The language "may be" reflects Congress' express intention to allow the IRS to obtain items of even potential relevance to an ongoing investigation, without reference to its admissibility. The purpose of Congress is obvious: the Service can hardly be expected to know whether such data will be relevant until it is procured and scrutinized.

Arthur Young & Co., 465 U.S. at 814. The Court recognized the inherent difficulties in determining prior to examination how useful the summoned records may be in determining a taxpayer's federal liability. Id. This low threshold of relevance follows from the wording of 26 U.S.C. § 7601, which authorizes the investigation of persons who "may be liable" for taxes.

In Arthur Young, the Court specifically addressed the relevance of tax accrual workpapers. At issue there, as is the case here, the IRS sought tax accrual workpapers. The Supreme Court observed:

> Corporate financial statements are one of the primary sources of information available to guide the decisions of the investing public. In an effort to control the accuracy of the financial data available to investors in the securities markets, various provisions of the federal securities laws require publicly held corporations to file their financial statements with the Securities and Exchange Commission. Commission regulations stipulate that these financial reports must be audited by an independent certified public accountant in accordance with generally accepted auditing standards.

* * * * * * *

> An important aspect of the auditor's function is to evaluate the adequacy and reasonableness of the corporation's reserve account for contingent tax liabilities. This reserve account, known as the tax accrual account, the noncurrent tax account, or the tax pool, represents the amount set aside by the corporation to cover adjustments and additions to the corporation's actual tax liability.
>
> * * * * * * *
>
> The auditor's tax accrual workpapers record this process of examination and analysis. Such workpapers may document the auditor's interviews with corporate personnel, judgments on questions of potential tax liability, and suggestions for alternative treatments of certain transactions for tax purposes. Tax accrual workpapers also contain an overall evaluation of the sufficiency of the corporation's reserve for contingent tax liabilities, including an item-by-item analysis of the corporation's potential exposure to additional liability. In short, tax accrual workpapers pinpoint the "soft spots" on a corporation's tax return by highlighting those areas in which the corporate taxpayer has taken a position that may, at some later date, require the payment of additional taxes.

Arthur Young, 465 U.S. at 810-813 (footnotes omitted). With this understanding of tax accrual workpapers, the Supreme Court concluded that such workpapers are "highly relevant" to the Service's examination. Arthur Young, 465 U.S. at 815.

There can be no doubt that here as well the tax accrual workpapers are "highly relevant" to the IRS's examination of Taxpayer's 2001 tax liability. Vasconcellos Decl. ¶¶ 16-21; Carmichael Decl. ¶¶ 30-31. The summons thus satisfies the Powell relevancy requirement.

*C. The Information Sought is Not Already in the Service's Possession*

The Service does not possess the summoned tax accrual workpapers. Vasconcellos Decl. ¶ 24.

*D. The Remaining Powell Requirements Have Been Met*

All required administrative steps regarding issuance and service of the summons have been followed. Vasconcellos Decl., ¶¶ 1-7, 22. In addition, no Justice Department referral, as defined by 26 U.S.C. § 7602(d)(2), is in effect for the Taxpayer with respect to the tax years under examination. Vasconcellos Decl. ¶ 23.

***3. The Taxpayer's Conditional Response Does Not Constitute Sufficient Compliance With the Summons***

As noted above, the Taxpayer has not produced any documents in response to the summons. However, the Taxpayer has indicated that it is willing to produce a subset of the documents the summons seeks–the tax accrual workpapers for the SILO transactions–if the IRS abandons its efforts to otherwise enforce the summons. As we will explain below, that type of conditional response does not constitute compliance with the summons.

The Taxpayer offered to produce its tax accrual workpapers for the SILO transactions, provided that the IRS refrained from otherwise seeking the Taxpayer's tax accrual workpapers. Vasconcellos Decl. ¶ 7. The IRS rejected this offer. Id. In Tiffany Fine Arts, the summoned person, Tiffany, made an offer to produce a subset of the documents requested–in that case, documents with the identity of purchasers redacted. It was the taxpayer's contention there that the IRS could complete its examination without having all of the information the summons sought. Tiffany Fine Arts, 469 U.S. at 312-313 ("Tiffany offered to produce records in which the names of the licensees were redacted. It took the position that if the IRS were truly interested in only Tiffany's liability, the redacted records would be sufficient for an adequate investigation."). The Supreme Court rejected Tiffany's contention:



1633341.1

> During the enforcement proceedings, Tiffany argued that it was possible to perform an investigation of its tax liability without resort to the names of all Pedi-Pulsor licensees. We have never held, however, that the IRS must conduct its investigations in the least intrusive way possible. Instead, the standard is one of relevance.

Tiffany Fine Arts, 469 U.S. at 323.

The United States has demonstrated the relevance of all of the Taxpayer's tax accrual workpapers, both those related to the SILO transactions and those related to other transactions. Vasconcellos Decl. ¶¶ 16-21; Carmichael Decl. ¶¶ 30-31. The Court should reject any contention made by the Taxpayer that it can condition compliance on producing only a portion of its tax accrual workpapers. Tiffany Fine Arts, 469 U.S. at 323.

### 4. *The Taxpayer Bears the Burden to Prove its Claims of Privilege*

In response to this summons enforcement action, we anticipate that the Taxpayer may contend that it can refrain from producing all or part of its tax accrual workpapers on the basis that they are covered by attorney-client privilege, the work-product doctrine, or both. Without seeing a specific articulation of its arguments (as Taxpayer did not provide a privilege log in response to the summons), it is impossible to respond to such contentions on a document by document basis. However, our preliminary response to such arguments would be that Taxpayer must establish that its claims of privilege are proper, and that it cannot do so in this case.

With respect to a claim of attorney-client privilege, as the party claiming the privilege, the Taxpayer bears the burden to prove that the privilege applies, and that the privilege has not been waived. In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003). Pursuant to what the First Circuit calls "reasonably well honed" dimensions, the privilege "protects only those communications that are confidential and are made

for the purpose of seeking or receiving legal advice." Id. "When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised." Id. Thus, in the instant case, if the documents are indeed covered by the attorney-client privilege, if those documents were shared with the Taxpayer's outside auditor, then the privilege has been waived.

Disclosure of the tax accrual workpapers to the outside auditors, if privileged to begin with (a point which we do not concede), destroys the confidentiality of the analysis and causes a waiver of the attorney-client privilege. United States v. El Paso Co., 682 F.2d 530, 540 (5th Cir. 1982) (a summons enforcement matter involving documents similar to the tax accrual workpapers at issue in this case, where the Court held that the company's disclosure of its tax pool analysis to the company's outside auditor destroyed the confidentiality of the analysis and thus caused a waiver of the attorney-client privilege). See also, United States v. Massachusetts Institute of Technology, 129 F.3d 681 (1st Cir. 1997) (disclosure of otherwise privileged communications to government auditing agency waived privilege); United States v. Cavallaro, 284 F.3d 236, 250 (1st Cir. 2002) (disclosure to outside accountants waived privilege, if any). Because of the nature of tax accrual workpapers, it is likely that the subject matter of the communications for which the privilege might be claimed, if not the documents themselves, was shared with the outside auditors. The auditors would need to know about the advice taxpayer received in evaluating the adequacy of the tax reserve. Carmichael Decl. ¶¶ 26-29. Disclosure of that advice would constitute a waiver of the privilege.

And, although Congress has, since El Paso and Cavallaro, created a limited taxpayer - tax practitioner privilege in Section 7525[5], that privilege would not apply to communications with an auditor for the purpose of evaluating reserves on a public financial statement because such communications are not made to obtain or provide tax advice. Carmichael Decl. ¶¶ 30-31. Moreover, communications in connection with a taxpayer's tax shelter transactions are not protected by Section 7525(a). Subsection 7525(b) creates an exception to the accountants' privilege for communications made in connection with the promotion of a tax shelter. At the time the communications at issue here were made,[6] subsection 7525(b) provided that:

> The privilege under subsection (a) shall not apply to any written communication between a federally authorized tax practitioner and a director, shareholder, officer, or employee, agent or representative of a corporation in connection with the promotion of the direct or indirect participation of the person in any tax shelter (as defined in section 6662(d)(2)(C)(iii)).

Section 6662(d)(2)(C)(iii) defines "tax shelter" as follows:

> For purposes of this subparagraph, the term "tax shelter" means –
>
> (I) a partnership or other entity,

---

[5] Section 7525(a) provides as follows:
With respect to tax advice, the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney shall also apply to a communication between a taxpayer and a federally authorized tax practitioner to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.

[6] This language was in effect with respect to communications between July 22, 1998 and October 21, 2004. The language of subsection 7525(b) was amended effective October 22, 2004 to its current form. See American Jobs Creation Act of 2004, Pub. L. 108-357, § 813(a), 118 Stat. 1581. The differences between the current version of the subsection and the version in effect prior to October 22, 2004 are not relevant to the instant action.

> (II) any investment plan or arrangement, or
> (III) any other plan or arrangement,
>
> if a significant purpose of such partnership, entity, plan or arrangement is the avoidance or evasion of Federal income tax.

There is no doubt that the SILO transactions, identified by the IRS in Notice 2005-13 as "tax avoidance transactions," fall squarely within the meaning of "tax shelter" in Section 6662(d)(2)(C)(iii), and thus within the exception of Section 7525(b). In addition, the very nature of the types of transactions for which a taxpayer would reserve (Carmichael Decl. ¶ 23), suggest that those transactions would also fall within this broad definition of tax shelter and therefore, within the exception of Section 7525(b).

With respect to a possible Taxpayer claim that its tax accrual workpapers are protected from disclosure under the work-product doctrine, in order to prevail on that claim, the Taxpayer must demonstrate that the documents were created in anticipation of litigation, and not for some other business purpose. The work-product doctrine, first announced by the Supreme Court in Hickman v. Taylor, 329 U.S. 495, 510-11 (1947), applies to documents "prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3) (entitled "Trial Preparation: Materials"); see also Fed. R. Civ. P. 26(b)(5) (party may oppose discovery of material because it is "privileged or subject to protection as trial preparation material"); Fed. R. Civ. P. 45(d)(2) (same). However, the work-product doctrine does not apply to "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998). Moreover, work-product protection does not extend to documents created "pursuant to public requirements

unrelated to litigation." See Proposed Fed. R. Civ. P. 26(b)(3) Advisory Committee's Note, reprinted in 48 F.R.D. 487, 501 (1969).

Given the nature of tax accrual workpapers, it appears that they are created for a business purpose, i.e., preparation of public financial disclosures required by law. See generally Carmichael Declaration. Further, the Supreme Court in Arthur Young rejected the notion that tax accrual workpapers prepared by a company's independent auditors are subject to work-product immunity. Arthur Young, supra at 816-817; see also, Massachusetts Institute of Technology, 129 F.3d at 687 (any work-product protection is waived by disclosure to an outside auditor). Thus, any tax accrual workpapers in the Taxpayer's possession should not be protected under the work-product doctrine.[7]

[7] In any event, Taxpayer must produce a privilege log and assert any claims of attorney-client privilege or work-product document by document. This it has not done, even though the summons provided clear instructions to this effect. See Exhibit 1, item 18.

**Conclusion**

The petition of the United States, along with the declarations of Revenue Agent Vasconcellos and Douglas R. Carmichael, establish a prima facie case for enforcement of the summons. The Court therefore should order respondents to show cause, supported by specific facts, why the summons should not be enforced.

ROBERT CLARK CORRENTE
United States Attorney

THOMAS P. COLE
JENNIFER AUCHTERLONIE
Trial Attorneys, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 514-9611
(202) 514-9593
Thomas.P.Cole@USDOJ.GOV
Jennifer.D.Auchterlonie@USDOJ.GOV