IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CA 06 198 T |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil No. ____________ |
| | ) | |
| TEXTRON INC. and SUBSIDIARIES, | ) | |
| | ) | |
| Respondent. | ) | |

**DECLARATION OF EDWARD J. VASCONCELLOS**

I, Edward J. Vasconcellos, pursuant to the provisions of 28 U.S.C. § 1746, declare:

BACKGROUND

1. I am a duly commissioned Revenue Agent of the Internal Revenue Service ("IRS"), employed in the Large and Mid-Size Business division of the IRS in Providence, Rhode Island. In that capacity, pursuant to 26 U.S.C. § 7602 and Treasury Regulation (26 C.F.R.) § 301.7602-1, and Delegation Order No. 4, as revised, I am authorized to issue and serve IRS Administrative Summonses (IRS Forms 2039).

2. I have been a Revenue Agent since 1973, and have acted as a Supervisory Revenue Agent since 1984. I am currently the team manager of a group of approximately twenty IRS employees conducting an examination into the tax liabilities of Textron Inc. and Subsidiaries (hereinafter "Taxpayer") for the 1998, 1999, 2000 and 2001 tax years. The Taxpayer has filed a consolidated income tax return for each tax year. The purpose of this examination is to ascertain the correctness of the tax returns filed by the Taxpayer for the years under examination and to determine the correct federal tax liabilities of the Taxpayer for those years. This Taxpayer, like

most taxpayers of its size, has its federal income tax returns examined by the IRS virtually every year.

3. The Taxpayer is a multi-industry publicly traded company with annual revenues of approximately $12 billion. Textron, Inc., is incorporated in the State of Delaware, and has approximately 190 subsidiaries. It employs more than 51,000 employees in 40 countries. The company provides goods and services in such industries as aircraft, industrial products, fastening systems and finance. Some of the company's more recognizable names are Bell Helicopter, Cessna Aircraft, and E-Z-GO.

THE SUMMONS AT ISSUE

4. In furtherance of the examination of Taxpayer's 2001 tax year and in accordance with 26 U.S.C. § 7602, on June 2, 2005, I issued an IRS summons directing the Taxpayer to appear at the IRS office in Providence, Rhode Island, on June 17, 2005, to give testimony and produce for examination the following books, papers, records, and other data: all of the Taxpayer's Tax Accrual Workpapers for the taxable year ended December 29, 2001. A true and correct copy of the summons is attached hereto as Exhibit 1.

5. As defined in the summons, the term "tax accrual workpapers" refers to "all accrual and other financial workpapers or documents created or assembled by the Taxpayer, an accountant for the Taxpayer, or the Taxpayer's independent auditor relating to any tax reserve for current, deferred, and potential or contingent tax liabilities, however classified or reported on audited financial statements, and to any footnotes disclosing reserves or contingent liabilities on audited financial statements. They include, but are not limited to, any and all analyses, computations, opinions, notes, summaries, discussions, and other documents relating to such

reserves and any footnotes. Such documents may also be referred to as the 'tax pool analysis,' 'tax liability contingency analysis,' 'tax contingency reserve analysis,' 'tax cushion analysis,' or any other similar name." The definitions contained in the summons are consistent with the language in the Internal Revenue Manual provisions concerning tax accrual workpapers.

6. In accordance with 26 U.S.C. § 7603, I served an attested copy of the summons described above upon the Taxpayer by personal delivery to Norman Richter, the Taxpayer's Vice President of Taxes, on June 2, 2005. A true and correct copy of the proof of service is included as a part of Exhibit 1.

7. By letter dated June 15, 2005, and hand-delivered to me that same date by Norman Richter, the Taxpayer informed the IRS that it would not be producing the materials sought by the summons. In that letter, the Taxpayer indicated that it would produce the tax accrual workpapers for a certain set of transactions, described in paragraph 14, below, on condition that the IRS agreed not to take any steps to seek the remainder of the Taxpayer's tax accrual workpapers. The IRS has not agreed to the Taxpayer's proposal. To date, the Taxpayer has not produced any materials sought by the summons.

## THE INTERNAL REVENUE SERVICE'S POLICIES ON SEEKING TAX ACCRUAL WORKPAPERS

8. The summons was issued in accordance with IRS policy concerning summonses seeking tax accrual workpapers in place at the time the summons was issued.

9. In Announcement 2002-63, 2002-2 C.B. 72, the IRS indicated that it would request certain tax accrual workpapers in the course of examining any return filed on or after July 1, 2002, that claimed any tax benefit arising out of a transaction that the IRS determined to

be a listed transaction at the time of the request. The term "listed transaction" is defined in the Treasury Regulations (Treas. Reg. § 1.6011-4(b)(2)) as a transaction that is the same as, or substantially similar to, a transaction that the IRS has determined to be a tax avoidance transaction and identified as a listed transaction in a notice, regulation, or some other form of published guidance. Announcement 2002-63, 2002-2 C.B. 72 is attached Exhibit 2.

10. The IRS policies in effect when I issued the summons provide that for returns filed after July 1, 2002, if a taxpayer claimed benefits from only one listed transaction, and the taxpayer disclosed that listed transaction to the IRS, the IRS would request only those tax accrual workpapers relating to that listed transaction. If the taxpayer did not disclose the listed transaction, the IRS would routinely request all tax accrual workpapers. The policies further provide that if a taxpayer claimed benefits from more than a single listed transaction in a single year, the IRS would request all tax accrual workpapers for that year, regardless of whether any or all the listed transactions were disclosed.

11. The Taxpayer timely filed its consolidated income tax return for its taxable year ending December 29, 2001, by obtaining an extension of time to file that return until September 15, 2002, and then by mailing the return to the IRS on September 13, 2002, placing its 2001 tax year within the years to which the IRS's revised policy concerning seeking tax accrual workpapers is applicable.

<u>TAXPAYER ENGAGED IN TWO OR MORE LISTED TRANSACTIONS</u>

12. On February 11, 2005, the IRS released Notice 2005-13, (2005-9 I.R.B. 630), in which the Service designated as a listed transaction certain transactions known as "sale-in, lease-out" ("SILO") transactions. The notice alerted "taxpayers and their representatives that these

transactions are tax avoidance transactions and identifies these transactions, and substantially similar transactions, as listed transactions. . . ." According to the notice, a SILO is a sale-leaseback arrangement between a taxpayer and a "tax-indifferent person in which substantially all of the tax-indifferent person's payment obligations are economically defeased and the taxpayer's risk of loss from a decline, and opportunity for profit from an increase in the value of the leased property are limited." A taxpayer entering into a SILO obtains the benefit of net tax deductions currently, with a corresponding deferral of income until later years, while exposing the taxpayer to little or no risk of loss. Notice 2005-13 is attached as Exhibit 3.

13. On the Taxpayer's Form 1120, Federal Corporate Income Tax Return, for the period ending December 29, 2001, the Taxpayer reported certain information on a Form 8271, Investor Reporting of Tax Shelter Registration Number. The Form 8271 reported that Textron Financial Corporation (one of the Taxpayer's subsidiaries) had participated in a series of transactions requiring a tax-shelter registration number. For each of the transactions identified, the Taxpayer listed the name of the tax shelter and the tax-shelter registration number.

14. In the course of the examination, after consultation with attorneys in the Office of Chief Counsel and with IRS technical advisors, the examination team determined that several of the transactions identified on the Form 8271 were the same as or substantially similar to the transactions described as SILO transactions in Notice 2005-13. Specifically, the examination team has determined that the following transactions are the same as or substantially similar to the SILO transactions described in Notice 2005-13:

a. Two transactions entered into on March 1, 2001, pursuant to which Textron Financial Corporation purported to, on the same day, purchase from and lease

 1673295.1

back to BT Cellnet Ltd. and other parties certain mobile telephone network equipment used in a United Kingdom telecommunications network;

b. Three transactions entered into on July 27, 2001, pursuant to which Textron Financial Corporation purported to, on the same day, purchase from and lease back to Regie Autonome des Transports Parisiens and other parties, certain rail equipment, including fixed and immovable property, used in the state-owned transportation network in the Paris area;

c. Two transactions entered into on September 26, 2001, pursuant to which Textron Financial Corporation purported to, on the same day, purchase from and lease back to Telecom Corp. of New Zealand Ltd. and other parties, certain telephone network equipment used in a New Zealand telecommunications network;

d. Two transactions entered into on September 28, 2001, pursuant to which Textron Financial Corporation purported to, on the same day, purchase from and lease back to Societe Francaise du Radiotelephone and other parties, hardware and software for use in a mobile telephone communications network in France.

15. After Notice 2005-13 was issued, I, along with other members of the examination team, consulted with attorneys in the Office of the Chief Counsel and with IRS technical advisors, to determine whether the IRS's designation of the SILOs as listed transactions triggered the examination team's responsibility to seek all of the Taxpayer's tax accrual workpapers for its 2001 tax year. As a result of those discussions, the IRS concluded that because the Taxpayer entered into multiple listed transactions in the 2001 tax year, and that return (which claimed benefits from those transactions) was filed after July 1, 2002, the IRS's policy to seek all tax

accrual workpapers for that year applied. The IRS then sought from the Taxpayer all of its tax accrual workpapers for its 2001 tax year.

THE SUMMONED INFORMATION MAY BE RELEVANT TO THE EXAM

16. The testimony, books, records, papers and other data sought by the summons may be relevant to determine the correctness of the Taxpayer's return and the correct tax liabilities of the Taxpayer for the tax year ending December 29, 2001.

17. I understand, based on my review of the Internal Revenue Manual, that tax accrual workpapers typically include determinations and related documentation of estimates of potential or contingent tax liabilities related to the tax positions taken by the taxpayer on certain transactions. In addition, there may be an audit trail and/or a complete explanation of the transactions. There may also be information on whether there was reliance on outside legal advice; an assessment of the taxpayer's position and potential for sustaining that position; references to promotional materials; and comments on unwritten agreements, confidentiality agreements, restitution agreements, contingency fees, expectations, and other material facts surrounding the transactions. The workpapers may include documents written by the taxpayer's employees and officers describing or evaluating the tax strategies.

18. For the SILO transactions described above, the Tax Accrual Workpapers may provide the IRS additional information about various aspects of the transactions. This information might include: the identity of personnel involved with the transactions; the Taxpayer's business purpose in entering into the transactions, if any; and the Taxpayer's views concerning potential weaknesses with the transactions' proposed tax treatment. The information contained in the tax accrual workpapers might not be revealed by the transactional documents

alone.

19. The tax accrual workpapers may identify other transactions or issues that have not yet been discovered or fully examined by the examination team. The identification of such transactions or issues would be relevant to determining the correctness of the Taxpayer's return and the Taxpayer's correct income tax liability for its 2001 tax year.

20. The tax accrual workpapers may also be helpful for ascertaining whether penalties should be imposed with respect to any understatements of tax or with respect to any failure to disclose a transaction. For example, for certain penalties, a taxpayer may assert a defense of reasonable cause, including that it was reasonably relying upon the advice of a professional. The tax accrual workpapers may contain information relevant to the taxpayer's claim of reliance on the advice of a tax professional who has been fully informed of all the relevant facts. Also, if the Taxpayer was required to disclose a transaction and failed to do so, the Taxpayer may be subject to an assessment of penalties for that omission.

21. The tax accrual workpapers may also indicate that a document otherwise claimed to be privileged was shared with independent auditors in the course of their evaluating the Taxpayer's tax accrual workpapers.

## THE REMAINING *POWELL* REQUIREMENTS ARE MET

22. All administrative procedures required by the Internal Revenue Code for the issuance of the summons have been followed.

23. No Justice Department referral, as defined by 26 U.S.C. § 7602(d)(2), is in effect for the Taxpayer with respect to the tax years under examination.

24. The materials sought by the summons are not yet in the possession of the IRS.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of April, 2006.

Edward J. Vasconcellos

EDWARD J. VASCONCELLOS
Revenue Agent
Internal Revenue Service