UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Petitioner | : | |
| v. | : | C.A. No. 06-198T |
| TEXTRON INC. and SUBSIDIARIES, | : | |
| Respondent | : | |

**AFFIDAVIT OF EDWARD M. ANDREWS**

City of Providence )
)
State of Rhode Island )

I, Edward M. Andrews, state that this affidavit describes certain facts relating to the creation of Textron Inc.'s tax accrual workpapers and matters relating to the IRS examination of the 2001 tax year.

**Employment at Textron Inc.**

1. I have been employed at Textron Inc. since 1986. I am the Director, Tax Audits. I work in the Tax Department and I report to Norman Richter, the Vice President, Taxes at Textron Inc. I was Director, Tax Audits in 2001 and 2002 when the 2001 tax accrual workpapers were created. My training is as an accountant.

2. One of my job responsibilities as the Director, Tax Audits is to interface with tax authorities, including the IRS, when they audit one of our tax returns. When the IRS has a question, I determine who at Textron Inc., or a related company, has the information that the IRS seeks. I transmit the request to such person and receive their answer and then provide the requested information to the IRS.

3. IRS audits every federal income tax return filed by Textron Inc. This is standard IRS practice for large taxpayers like Textron Inc. We make available a room for IRS agents to work in, provide access to copy facilities, and provide other support. I maintain detailed records recording when an IRS request for information is received, keeping a copy of the request itself and our reply, and maintaining a record of when our reply is delivered to IRS.

**Tax Accrual Workpapers**

4. I have reviewed the tax accrual workpapers for 2001. I contributed to the creation of these workpapers in three ways.

5. First, I identified several issues to be included in the tax accrual workpapers. These were issues for which (a) either we had disclosed to the IRS a tax position or the IRS identified a tax position claimed on a return and (b) with the advice of the tax attorneys, we determined that the tax position claimed by Textron Inc. on its tax return was incorrect, for example, because a recent court decision resolved the issue or because we conceded the issue in a prior audit cycle. The hazard percentage for these issues was listed as 100%.

6. Second, I assisted the attorneys and Roxanne Cassidy in computing the amount of the tax reserve for each item identified by the tax attorneys as one for which there were litigation hazards. The amount would be affected by the number of "open" tax years in which that issue was present. An open tax year is one for which the statute of limitations on assessments by the IRS was open, i.e., had not expired. As Director, Tax Audits, I had the most current information relating to which tax years were open.

7. Third, when the tax attorneys discussed the legal arguments relating to whether an issue should be included in the tax accrual workpapers, or how much of a reserve should be included, I would contribute to that discussion my knowledge of how such issues had been treated in prior audit cycles, and other factual background to an issue.

**Status of Audit of 2001 Tax Year**

8. The 2001 tax year was audited as part of a four year audit cycle that included 1998-2001. That audit commenced in April, 2003. In connection with that audit, the IRS provided us with 524 written requests for information. As of June 2, 2005, when the summons was issues, the IRS had issued to Textron 522 formal information requests. The IRS issued only 2 additional information requests after June 2, 2005. All of the 524 information requests are closed, except for the request for the tax accrual workpapers. The factual information provided to the IRS in response to all information requests fills 9 four-drawer file cabinets. There are no outstanding requests for factual information.

9. In connection with the IRS audit of the leveraged leases in question, the IRS gave us 101 written requests for information with respect to such leases and all requests for factual information relating to these leases have been responded to. The information provided to the IRS relating to the leveraged leases is substantial in scope and fills one entire four-drawer filing cabinet.

10. On March 22, 2005 Textron and the IRS held a meeting. At that meeting the IRS issued an agenda that was titled "Closing Timetable/Quarterly Meeting Agenda" The meeting was described in the agenda given to Textron by the IRS as "The purpose of this meeting is to determine what steps need to be taken to bring this examination to completion" We did have meetings with the IRS regarding the 1998-2001 audit after the summons was issued, but the purpose of those meetings was to discuss the summons, statute extensions,

and administrative issues with respect to the 1998-01 audit cycle. At this time, there is no IRS audit activity in respect of the 1998-2001 IRS audit.

I, Edward M. Andrews, declare under penalty of perjury that the foregoing is true and correct.

Executed on August 9, 2006.

E. M. Andrews
Edward M. Andrews

Signed and sworn to before me, a Notary Public, this 9th day of August, 2006.

My commission expires: April 20, 2007.

Mary E. Harrop, Notary Public

**Mary E. Harrop, Notary Public**
**Commission Expires April 20, 2007**